UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISAAC T. AGBANIYAKA,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL AIRLINES, INC., (now known as "United Airlines, Inc.") and UNITED AIRLINES, INC.,<br><br>Defendants. | Civ. No. 2:14-7546 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

    A former Continental Airlines, Inc. ("Continental") pilot, Plaintiff brings this action against United Airlines, Inc. ("UA"), alleging disparate treatment, retaliation, and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").[1] UA now moves for summary judgment under Federal Rule of Civil Procedure 56. The Court decides the matter without oral argument. FED. R. CIV. P. 78(b). For the reasons that follow, the motion is **GRANTED**.

    **I.    BACKGROUND**

    The following facts are undisputed unless otherwise noted.[2] A man of African descent, Plaintiff was born in Nigeria, where he completed his aviation education. Decl. of Amanda Inskeep ("Inskeep Decl."), Ex. A, Dep. of Isaac Agbaniyaka 36:25–37:1, Mar. 17, 2016 ("Pl.'s Dep."), ECF No. 114-3; Decl. of Edward Trueblood ("Trueblood Decl."), Ex. A, Pl.'s Dep. 28:1–16, ECF No. 124. He moved to the United States in 1995. Pl.'s Dep. 36:25–37:1. In 2001, Plaintiff began work as a Continental pilot. Pl.'s Dep. 45:14–17. In between his hiring and termination dates, Plaintiff and other pilots were furloughed after the September 11th terrorist attacks. SMF ¶ 6. Following his furlough, in 2005, Plaintiff took a leave of absence and returned to Continental in 2006. Pl.'s Dep.

---

[1] Although Continental hired and terminated Plaintiff, in 2010 the company began the merger process with UAL Corp. to form United Airlines, Inc.

[2] Plaintiff purports to contest UA's Statement of Undisputed Material Facts, ECF No. 114-2 ("SMF"), but fails at times to adhere to Rule 56 and Local Civil Rule 56.1(a). A party opposing summary judgment must dispute asserted material facts with a basis in the record. *See DeShields v. Int'l Resort Props.*, 463 F. App'x 117, 120 (3d Cir. 2012). To the extent Plaintiff contests UA's SMF with unsupported allegations, argument, and with contradicting statements found in Plaintiff's sworn declaration (ECF No. 123-4), then UA's SMF are deemed admitted.

1

50:21–23. Continental then terminated Plaintiff in 2011. Inskeep Decl., Ex. E., Pl.'s Dep. Ex. 12.

In 2005, Continental and the Air Line Pilots Association—the exclusive bargaining representative of Continental pilots—entered into a collective bargaining agreement ("CBA") that set out the terms and conditions of employment. Decl. of Wayne Slaughter, Ex. C ("Slaughter Decl."), ECF No. 114-4. The CBA permitted Continental the right to compel a pilot to undergo a Fitness for Duty ("FFD") examination if it had, among other reasons, "reasonable cause to question a pilot's ability to perform his duties." *Id.*

While at Continental, Plaintiff flew three types of aircraft and, in each case, had to satisfy initial and recurrent training requirements. SMF ¶¶ 3, 19–20. The initial training qualification programs involved ground school, flight simulator and computer-based trainings, and initial operating experience ("IOE"). *Id.* ¶ 19. IOE means flying the aircraft with an instructor pilot and actual passengers. *Id.* ¶ 20. After completing IOE, a pilot is deemed qualified and can then fly regularly scheduled flights. *Id.* ¶ 23. Once qualified, pilots undergo recurrent trainings and evaluations throughout the year. *Id.* ¶ 24.

Whether in a simulated or live-flying environment with other pilots, Plaintiff received substandard pilot proficiency grades. Decl. of Clifford Pittman ¶¶ 9, 29–31, 35 ("Pittman Decl."), ECF No. 114-5; Inskeep Decl., Ex C., Dep. of William Blocker 21:19–23:13, 71:12–19, Mar. 15, 2017 ("Blocker Dep."). In such cases, Plaintiff went on "short cycle" status, which meant reducing the time between normal training and assessment intervals. Pittman Decl. ¶¶ 5–6; Pl.'s Dep. 150:11–22. Being placed in short cycle status happened to Plaintiff more than once. Pittman Decl. ¶ 11, Ex. A. After an instructor rated Plaintiff below proficient in a February 2011 flight simulator training and in reviewing Plaintiff's training history, Continental's Training Department decided to stop Plaintiff's training. *Id.* ¶¶ 32–34; Blocker Dep. 23:1–12. This left Plaintiff's supervisory chief pilot with a decision: either terminate Plaintiff or start the FFD process.

Instead of terminating Plaintiff's employment for failure to perform, the chief pilot authorized an FFD exam to determine if a medical issue impacted Plaintiff's flying abilities. Inskeep Decl., Ex. B, Dep. of Fred Stankovich 57:2–58:7, Apr. 6, 2017; Pittman Decl. ¶ 34; Pl.'s Dep. Ex. 12. Once it started, Plaintiff took actions to stop the exam. First, through an attorney, he filed a disparate treatment complaint over the February 2011 flight simulator training event and then later raised additional discriminatory claims. SMF ¶¶ 124, 131–38. Upon receiving the more recent allegations, the chief pilot suspended the FFD process until Continental's employee compliance manager completed an investigation. Pl.'s Dep. Ex. 10; Slaughter Decl. ¶¶ 2–3. The investigator found all the complaints unsubstantiated. SMF ¶ 140. Second, Plaintiff filed a union grievance, which was denied. SMF ¶¶ 115–16.

With the discrimination complaints unfounded and after affording extra time to complete the FFD exam, Plaintiff refused to complete it. Pl.'s Dep. Ex. 10. In response, Continental terminated his employment. SMF ¶ 122. Plaintiff then filed an Equal Employment Opportunity Commission ("EEOC") charge and UA admitted that the

2

EEOC issued Plaintiff a "Right to Sue" letter which gave rise to this suit. Pl.'s Mem., Ex. A, ECF No. 21-1; Defs.' Answer ¶ 8, ECF No. 47.

UA now moves for summary judgment, arguing that Plaintiff failed to meet its pilot performance expectations and, in any event, he cannot show how Continental's articulated reason for termination was a pretext for discrimination. *See* Mem. in Supp. Def.'s Mot. Summ. J. 18–27, ECF No. 114-1. UA also argues the Court must dismiss the retaliation claim on the same job performance grounds. *Id.* at 27–29. Finally, UA contends Plaintiff's unlawful harassment claims, taken as a whole, lack the required severity or pervasiveness to support a hostile work environment finding. *Id.* at 29–32.

Plaintiff opposes, arguing the continued training requirements and the FFD exam served as pretext for discrimination because he performed his job satisfactorily. Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 12–13, 18–19, ECF No. 123. Plaintiff also argues Continental terminated him in retaliation for filing the discrimination complaints. *Id.* at 18. In reply, UA reiterates its arguments and contends Plaintiff's Statement of Material Facts ("PSMF"), ECF No. 125, and supporting declarations thereto, contain improper argument, disputes to non-material facts, and contradictory statements. UA's Reply Br. 1–15, ECF No. 126; Def.'s Reply to PSMF 2–10, ECF No. 128.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In its review, the Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

The Court will first address the disparate treatment claims and then turn to the retaliation and hostile work environment claims. Ultimately, as to all claims, Plaintiff has failed to create genuine issues of material fact for trial. *See Anderson*, 477 U.S. at 248.

### A. Disparate Treatment

Title VII prohibits employers discharging an employee because of that person's race or national origin, among other grounds. 42 U.S.C. § 2000e–2(a)(1). Absent direct evidence, a plaintiff may use indirect evidence to prove discriminatory termination under the *McDonnell Douglas* burden-shifting scheme. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). But despite the shifting burdens of production, the plaintiff retains the burden of persuasion at all times by a preponderance of the evidence. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Under the *McDonnell Douglas* scheme, a plaintiff must first make out a prima facie case of discrimination by

showing: (1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred "under circumstances that give rise to an inference of unlawful discrimination." *Id.* & n.6. An event that may create an inference of unlawful discrimination is if the employer treats a plaintiff less favorably than similarly situated employees outside his protected class. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (citations omitted).

If a plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action at issue." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). Upon a proffered reason, a plaintiff then must prove that the employer's given reason was pretext for discrimination. *Jones*, 198 F.3d at 413. To show pretext and avoid summary judgment, a plaintiff must identify "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

There is no dispute as to Plaintiff meeting the first and third prima facie elements since he is a member of a protected class and Continental terminated his employment. That leaves only the second and fourth elements in dispute: (1) whether Plaintiff met his employer's legitimate performance expectations and (2) if he experienced less favorable treatment than individuals outside his protected classes so as to infer discrimination. The Court here finds Plaintiff has failed to show a prima facie case of discrimination. And even assuming otherwise, Plaintiff identified no evidence to suggest Continental's legitimate, non-discriminatory reason for termination was pretextual.

i. Prima facie case

As to the second prima facie element, the record reflects Plaintiff failed to meet Continental's pilot performance expectations when he refused to complete the FFD exam. The exam order stemmed from a documented history of poor or marginal performances in live-flying and training events. Confronted with memoranda and sworn testimony from Continental employees noting training and proficiency challenges spanning years, Plaintiff offered no evidence or deposition testimony from other employees to support the disparate treatment claims that would create genuine issues of material fact. Instead, he replaced records of his employer's judgment with his own perception of performance. Such personal beliefs are no substitute for evidence and, in fact, are irrelevant. Even if an outside observer found the pilot instructors' evaluations and Continental's decision to terminate Plaintiff as poor or flawed, "[b]arring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions." *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991), *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

And when Continental exercised its right under the governing CBA to have Plaintiff undergo an FFD exam, he refused to comply. And he still refused even after it paused the FFD process to investigate the filed discrimination claims which were unsubstantiated. Pl.'s Dep. Ex. 15. In all, Plaintiff's refusal to complete the FFD exam provided Continental with a legitimate, non-discriminatory reason for termination. *See Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007).

As to the fourth prima facie element, Plaintiff cannot show how other similarly situated pilots outside his protected classes (black and Nigerian) were treated more favorably. Apart from mentioning employee names, Plaintiff offered no single person as a similarly situated comparator as to performance, qualifications, or conduct. *See Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). Normally, comparator evidence includes "showing that employees shared the same supervisor, performance standards, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct of the employer's treatment of them." *Id.* (citations omitted). Unable to produce evidence that would allow a factfinder to draw an inference of discrimination with comparator evidence, there remains no genuine issue for trial. For these reasons, Plaintiff cannot show a prima facie case.

### ii. Pretext

The evidence above as to Plaintiff's inability to meet his employer's job performance expectations focuses on the same circumstances as to whether the termination for failure to complete the FFD exam was pretextual. Plaintiff adduced no evidence here showing how race or national origin were determinative factors in the termination. *Fuentes*, 32 F.3d at 764. And he offered no basis to disbelieve Continental's proffered reason for termination other than arguing he was singled out for unfair treatment. Plaintiff gave no evidence that contained "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact-finder could rationally find them unworthy of credence.'" *Jones*, 198 F.3d at 413 (quoting *Keller*, 130 F.3d at 1108–09).

## B. Retaliation

Title VII prohibits an employer from discriminating against an employee who "opposed any . . . unlawful employment practice" or if "he has made a charge . . . or participated in any manner in an investigation . . . ." 42 U.S.C. § 2000e–3(a). To sustain a prima facie retaliation claim, a plaintiff must show: "(1) a protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the employer's adverse action." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 329 (3d Cir. 2015) (citation and quotation marks omitted). As to the third element, a plaintiff must proffer evidence about "the scope and nature of the conduct and circumstances that could support the inference of causation." *Farrell v. Planter's Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). A recognized way to raise a causal link is if the circumstances show an unusually suggestive proximity in time between the protected activity and adverse

action. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). On the other hand, if the protected activity and adverse action lacked closeness in time, a court may look to the intervening period for evidence such as a "pattern of antagonistic behavior" against the employee. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997).

The Court here agrees with Continental that the temporal proximity between filing the complaint and then termination alone is insufficient to show causation. First, Plaintiff's termination came six months after the complained-of discrimination. Indeed, this Circuit has found no "unduly suggestive temporal proximity" when three months passed between an employee's protected activity and the adverse action. *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). Second, more than a month prior to filing the complaint, Continental had already decided to stop Plaintiff's training and begin the FFD process. The record shows no evidence, such as inconsistent reasons for termination, to create an inference of causation. *See Farrell*, 206 F.3d at 284. And as discussed below, no reasonable jury could conclude Plaintiff demonstrated a pattern of antagonism from the time of filing the complaints to the termination. Accordingly, Plaintiff's retaliation claim fails.

### C. Hostile Work Environment

Title VII is no "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). To prevail on a hostile work environment claim, a plaintiff must show: (1) he suffered discrimination based on his protected class; (2) such discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for employer liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citations omitted). As to the "severe or pervasive" element, "a court must consider the totality of the circumstances, 'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a more offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mandel*, 706 F.3d at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)) (citation omitted).

Plaintiff asserts the following harassing incidents over a three-year period created a hostile work environment: (1) in 2007, a white pilot told Plaintiff to stop talking in the cockpit when pointing out a safety issue; (2) in 2007, a pilot told Plaintiff that another pilot told him that Plaintiff chanted a hymn like a terrorist; (3) in 2009 and 2010, the instructor pilots in two training events rated Plaintiff as unsatisfactory; and (4) in 2010, Plaintiff's assistant chief pilot asked Plaintiff if translating directions received in English into "a native African jungle dialect" would aid in comprehension. *See* SMF ¶¶ 131–38.

Although "extremely serious" "offhanded comments, and isolated incidents" may create a hostile work environment, when viewing the above incidents as a whole, the acts fail to add up to the needed kind of severe or pervasive hostility to warrant relief. *See Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir.2005) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Even if the inappropriate "jungle dialect" or

"terrorist" comments were based on Plaintiff's race or national origin, that alone is too isolated to have altered the conditions of Plaintiff's work environment. *See, e.g.*, *Hanzer v. Mentor Network*, 610 F. App'x 121, 126 (3d Cir. 2015) (per curiam) (finding no severe or pervasive work environment when individuals mocked an employee's accent). And the record evidence provides no indication that the remaining incidents were directed at Plaintiff based on his protected classes. At its core, Plaintiff puts forth a subjective belief he suffered severe or pervasive treatment, which is insufficient to withstand summary judgment.

### D. Awarding Costs

Finally, based on a single statement in its brief, Continental seeks to recover its litigation costs. *See* 42 U.S.C. § 2000e–5(k). Under Title VII's fee-shifting statute, a prevailing defendant may recover costs when the plaintiff's "claim was frivolous, unreasonable, or groundless." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). The Court finds awarding costs inappropriate because Plaintiff marshalled colorable arguments to support the employment discrimination claims.

## IV. CONCLUSION

For the foregoing reasons, UA's summary judgment motion is **GRANTED**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

Date: March 12, 2018